IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GREGORY STAGLIANO, | : | CIVIL ACTION |
| | : | NO. 21-4936 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| JUDGE MICHAEL COLL, et al., | : | |
| | : | |
| Defendants. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                                    April 5, 2022

## I.   INTRODUCTION

Pro se Plaintiff Gregory Stagliano ("Plaintiff") brings claims under the Fourteenth Amendment Due Process Clause and 42 U.S.C. § 1983 for monetary and injunctive relief against: (1) Mary Mann, the former Assistant District Attorney of Delaware County, (2) Michelle Deery, an investigator of Delaware County's Criminal Investigation Division, (3) Katayoun Copeland, the former District Attorney of Delaware County, (4) William Judge, the former Deputy District Attorney of Delaware County, (5) Judge John Whelan, in his capacity as the former Assistant District Attorney of Delaware County,[1] (6) the Commonwealth of Pennsylvania, (7) the Commonwealth of Pennsylvania Department of

---

[1]     Judge Whelan is a current judge on the Court of Common Pleas of Delaware County.

Health and Human Services, (8) Teresa Miller, the current Secretary of the Pennsylvania Department of Human Services, (9) Jessica Keith, the Executive Director of Norristown State Hospital, (10) Patrick Marano, counsel for Norristown State Hospital, (11) Judge Michael Coll, a judge on the Delaware County Court of Common Pleas, (12) Judge James Bradley, a judge on the Delaware County Court of Common Pleas, (13) the Delaware County Board of Judges, (14) the County of Delaware, and (15) The GEO Group, Inc.,[2] a corporation that operates George W. Hill Correctional Facility (collectively, "Defendants").

Defendants have filed several motions to dismiss Plaintiff's complaint.[3] For the following reasons, Defendants' motions will be granted.

## II.   BACKGROUND

For over 30 years, Plaintiff was a practicing attorney in the Commonwealth of Pennsylvania and in New Jersey. Plaintiff alleges that he was diagnosed with reflex sympathetic dystrophy and, as a result, was put on medication that affected his memory and his ability to practice law. The Pennsylvania Disciplinary

---

[2]    Though this defendant is listed in the docket as "Geo, Inc." the formal name of the entity is The GEO Group, Inc.

[3]    All Defendants have moved to dismiss except the Commonwealth of Pennsylvania. Defendant has failed to serve the Commonwealth of Pennsylvania so it will be dismissed for lack of prosecution. Even if the Commonwealth of Pennsylvania had been served, Plaintiff's claims against it would be barred by Eleventh Amendment immunity.

Board (the "Board") then filed complaints against Plaintiff.
Plaintiff alleges that the Board's complaints related to issues
with Plaintiff's management of client "[t]rust account[s]."
Compl. ¶ 19. According to Plaintiff's allegations, the Board
eventually placed Plaintiff on medical inactive status, closed
his practice, and requested that a conservator oversee
Plaintiff's remaining cases. According to Plaintiff, the
"prosecutor" from the Board sent letters to the Delaware County
District Attorney's Office alleging Plaintiff was a "thief." Id.
at ¶¶ 25, 26.

Public record reveals that the Delaware County District
Attorney's Office filed criminal charges against Plaintiff.[4] The
public docket shows Plaintiff was charged in two separate
actions. In one action, Commonwealth of Pennsylvania v.
Stagliano, CP-23-CR-0000871-2019, Plaintiff was charged with one
count of theft by unlawful taking in violation 18 Pa. Cons.
Stat. § 3921, two counts of forgery in violation of 18 Pa. Cons.
Stat. § 4101, and one count of insurance fraud in violation of

---

[4]    The Court may rely on public record at the motion to dismiss stage. See
In deciding either a facial Rule 12(b)(1) or Rule 12(b)(6) motion, the Court
limits its inquiry to the facts alleged in the complaint, documents that are
attached to, integral to, or explicitly relied upon in the complaint, and
matters of public record. See Constitution Party of Pa. v. Aichele, 757 F.3d
347, 358 (3d Cir. 2014) ("[A] facial [Rule 12(b)(1)] attack calls for a
district court to apply the same standard of review it would use in
considering a motion to dismiss under Rule 12(b)(6)"); In re Asbestos Prods.
Liab. Litig. (No. VI), 822 F.3d 125, 133 n.7 (3d Cir. 2016) (regarding Rule
12(b)(6)); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998
F.2d 1192, 1196 (3d Cir. 1993) (regarding Rule 12(b)(6)).

18 Pa. Cons. Stat. § 4117. In the other action, Commonwealth of Pennsylvania v. Stagliano, CP-23-CR-0005215-2017, Plaintiff was charged with nine counts of unlawful taking in violation of 18 Pa. Cons. Stat. § 3921, nine counts of theft by deception in violation of 18 Pa. Cons. Stat. § 3922, nine counts of receiving stolen property in violation of 18 Pa. Cons. Stat. § 3925, nine counts of theft of services in violation of 18 Pa. Cons. Stat. § 3926, nine counts of embezzlement in violation of 18 Pa. Cons. Stat. § 3927, and one count of unauthorized practice of law in violation of 42 Pa. Cons. Stat. § 2524. Plaintiff's underlying criminal prosecution is ongoing.

At one point, the criminal actions against Plaintiff were transferred to Judge Coll on the Mental Health Court of Delaware County, who ordered Plaintiff to undergo testing and treatment at Norristown State Hospital to assess Plaintiff's competency to stand trial.

Plaintiff brings this action against several current and former prosecutors of the Office of the District Attorney of Delaware County and two judges challenging rulings in the underlying criminal proceedings. Plaintiff also brings section 1983 claims against the Commonwealth of Pennsylvania, the Commonwealth Department of Human Services, and related individuals regarding the evaluation and treatment Plaintiff received at Norristown State Hospital. Finally, Plaintiff brings

4

section 1983 claims against the Delaware County Board of Judges, the County of Delaware, and the County's prison provider, The GEO Group, Inc., alleging that the prison's conditions violated Plaintiff's rights. Defendants have moved to dismiss Plaintiff's claims against them. Defendants' arguments will be addressed herein.

## III. LEGAL STANDARD

A party may move to dismiss a complaint for failure to state a claim. Fed. R. Civ. P. 12(b)(6). When reviewing such a motion, the Court is "required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn from [the allegations] after construing them in the light most favorable to the non-movant." Conard v. Pa. State Police, 902 F.3d 178, 182 (3d Cir. 2018) (quoting Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994)).

To survive a motion to dismiss for failure to state a claim, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Regardless, the Court has an obligation to liberally construe a pro-se litigant's pleadings. Higgs v. Atty. Gen. of U.S., 655 F.3d 333, 339 (3d Cir. 2011). The Court will "apply the relevant legal principle even when the complaint has failed to name

it." <u>Vogt v. Wetzel</u>, 8 F.4th, 182, 185 (3d Cir. 2021) (citing <u>Mala v. Crown Bay Marina, Inc.</u>, 704 F.3d 239, 244–45 (3d Cir. 2013)). The "pro se litigants still must allege sufficient facts in their complaints to support a claim." <u>Id.</u> (citing <u>Mala</u>, 704 F.3d at 243). An unrepresented litigant, however, "cannot flout procedural rules — they must abide by the same rules that apply to all other litigants." <u>Id.</u> (citing <u>Mala</u>, 704 F.3d at 243).

## IV.  DISCUSSION

Motions to dismiss have been filed by Mary Mann, Michelle Deery, Katayoun Copeland, William Judge, and Judge Whelan (collectively, the "Prosecutorial Defendants"), the Pennsylvania Department of Human Services, Secretary Teresa D. Miller, Jessica Keith, and Patrick Marano (collectively, the "DHS Defendants"), Judge Michael Coll and Judge James Bradley (collectively, the "Judicial Defendants"), and the Delaware County Board of Judges, the County of Delaware, and The GEO Group, Inc. (collectively, the "County Defendants"). The motions filed by each group of defendants will be addressed in turn.[5]

---

[5]    Mann and Deery jointly filed a motion to dismiss, while Copeland, Judge, and Whelan separately filed a motion to dismiss. Because the arguments in both motions overlap, they will be discussed together.

The County of Delaware filed its motion jointly with Copeland, Judge, and Whelan, while the Delaware County Board of Judges filed its motion jointly with Judges Coll and Bradley. Because the claims against the County of Delaware and the Delaware County Board of Judges are related, the arguments made by these defendants will be discussed together as well.

Though Plaintiff was formally a practicing attorney, he is currently inactive so the Court will apply the pro se standard and liberally construe Plaintiff's allegations.

## A. The Prosecutorial Defendants

Plaintiff brings claims pursuant to the Due Process Clause of the Fourteenth Amendment and 42 U.S.C. § 1983 against Katayoun Copeland in her capacity as the former District Attorney of Delaware County (Counts IV, IX, X), Mary Mann in her capacity as the former District Attorney of Delaware County (Count IV, X), William Judge in his capacity as the Delaware County Deputy District Attorney (Counts IV, X), the Honorable John Whelan in his capacity as the former District Attorney of Delaware County (Counts IV, IX, X), and Michelle Deery in her capacity as the investigator for Delaware County's Criminal Investigation Division (Counts IV, X). Defendants Mann and Deery have filed a joint motion separately from Defendants Copeland, Judge, and Whelan. Because Defendants Mann and Deery's arguments overlap with the arguments submitted by the remaining Prosecutorial Defendants, both motions will be addressed herein.

During the course of the underlying criminal proceedings, Plaintiff (as the defendant in those actions) filed motions to be found incompetent to stand trial. The cases were transferred to Judge Coll on Delaware County's Mental Health Court. Judge Coll was designated to determine whether Plaintiff was competent

7

to stand trial. Plaintiff alleges that Defendants Copeland,
Mann, Judge, and Whelan violated Plaintiff's constitutional
rights under the Fourteenth Amendment's Due Process Clause and
section 1983[6] by wrongfully causing Plaintiff's case to be
transferred to Judge Coll, by causing Plaintiff to become
illegally incarcerated at George W. Hill Correctional Facility,[7]
and by failing to have Plaintiff treated at the Norristown State
Hospital.

Plaintiff specifically alleges that Defendants Copeland
and Whelan allowed Plaintiff to be illegally incarcerated,
ignored requests from Plaintiff, and allowed improper
proceedings to occur before Judge Coll. Compl. ¶¶ 215, 216.
Plaintiff alleges that Defendant Copeland allowed "rampant
illegalities perpetrated upon [Plaintiff] by Defendant Coll" to
continue, and that Defendant Copeland "had the ability to put an
end to this horrible affair but she failed and refused to do
so." Id. ¶¶ 211-212. Plaintiff alleges that Defendant Mann
intentionally tried to intimidate witnesses, failed to look into
the various allegations, exaggerated the amount of money in

---

[6]    Defendant Mann appears to read Plaintiff's complaint as arising under
the American with Disabilities Act ("ADA"). Plaintiff's complaint does not
read as an ADA claim, but even if Plaintiff intended to bring a claim under
the ADA against Defendant Mann, the Court would not need to consider the
claim. As explained below, Plaintiff's claims against Defendant Mann will be
dismissed because Defendant Mann is entitled to prosecutorial immunity.

[7]    The public dockets reveal Plaintiff was incarcerated pending the
assessment of his competency.

controversy, directed Plaintiff's case to a Mental Health Court to take advantage of Plaintiff, and encouraged Judge Coll to unethically proceed with a competency hearing, among other conduct. Id. ¶ 228. Plaintiff alleges that Defendant Deery pressured "victims" to participate in Plaintiff's prosecution, which resulted in "manipulated allegations that have continued to slander and maliciously prosecute Plaintiff." Id. ¶¶ 221, 223. Finally, Plaintiff broadly alleges that all Prosecutorial Defendants "engaged in outrageous, persistent prosecutorial misconduct for over five years now which has served to permanently deprive Plaintiff of any ability for a fair trial." Id. ¶ 220.

As explained below, the Prosecutorial Defendants' dismissal is warranted because they are immune from prosecution.

### 1. Absolute Prosecutorial Immunity

The Prosecutorial Defendants contend that absolute prosecutorial immunity prevents Plaintiff from pursuing his claims against them. "The employee of an attorney, including the employee or agent of a prosecutor, is also granted absolute immunity from [section 1983] suits where the function of the employee and the judicial process are closely allied." Moore v. Middlesex Cty. Prosecutors Office, 503 F. App'x 108, 109 (3d Cir. 2012) (citing Waits v. McGowan, 516 F.2d 203, 206 (3d Cir. 1975)).

If the prosecutor's actions were intertwined with advocacy, and "intimately associated with the judicial phase of the criminal process," then absolute immunity applies. <u>Imbler v. Pachtman</u>, 424 U.S. 409, 430 (1976); <u>see also</u> <u>Tindell v. Pennsylvania</u>, 398 F. App'x 696, 698 (3d Cir. 2010) ("It is well established that prosecutors sued under § 1983 enjoy absolute immunity for their conduct in initiating a prosecution and in presenting the State's case.") (internal citation and quotation marks omitted); <u>Waits</u>, 516 F.2d at 206 ("The federal courts have recognized that where the function of an attorney's employee and the judicial process are closely allied, immunity will be granted, whereas if such function is not directly related to the court's decision-making activities, such immunity may not be available.").

However, there is "a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand." <u>Buckley v. Fitzsimmons</u>, 509 U.S. 259, 273 (1993). Thus, "[w]hen a prosecutor performs the investigative functions normally performed by a detective or police officer," they are no longer engaging in the role of an advocate and so "it is neither appropriate nor justifiable that, for the same act,

10

immunity should protect the one and not the other." Id.
(internal citation and quotation marks omitted). Accordingly,
"[t]he court must ascertain just what conduct forms the basis
for the plaintiff's cause of action," and "then determine what
function (prosecutorial, administrative, investigative, or
something else entirely) that act served." Schneyder v. Smith,
653 F.3d 313, 332 (3d Cir. 2011).

Plaintiff's claims are premised on the Prosecutorial
Defendants' involvement in the underlying proceedings before
Judge Coll. Per Plaintiff's allegations, Defendants Mann,
Copeland, Judge, and Whelan were engaged in their roles as
prosecutorial advocates by assessing the charges against
Plaintiff and by presenting the Commonwealth's case before Judge
Coll on the Mental Health Court. Accordingly, Defendants Mann,
Copeland, Judge, and Whelan are shielded by prosecutorial
immunity here.

Similarly, Defendant Deery is deemed to have prosecutorial
immunity. As noted, Defendant Deery was an investigator in the
District Attorney's Office. Generally, "[t]he employee of an
attorney, including the employee or agent of a prosecutor, is
also granted absolute immunity from [section 1983] suits where
the function of the employee and the judicial process are
closely allied." Moore, 503 Fed. App'x at 109 (citing Waits, 516
F.2d at 206). Here, because, per Plaintiff's allegations,

Defendant Deery's actions related to interviewing witnesses and assisting the District Attorney's Office with the prosecution of the case, prosecutorial immunity also extends to Defendant Deery. See also Schrob v. Catterson, 948 F.2d 1402, 1414, 1416 (3d Cir. 1991) (noting prosecutorial immunity extends to "the preparation necessary to present a case" and the "obtaining, reviewing, and evaluation of evidence.").

Plaintiff, in response, argues that the prosecution was "farcical," because Plaintiff was prosecuted for "theft" without basis. Because Plaintiff's allegations relate to the Prosecutorial Defendants in their roles as advocates, absolute prosecutorial immunity applies.[8]

### 2. Qualified Prosecutorial Immunity

The Prosecutorial Defendants contend that even if absolute prosecutorial immunity does not apply, qualified prosecutorial immunity applies. The doctrine of qualified immunity gives "government officials breathing room to make reasonable but mistaken judgments by protect[ing] all but the plainly

---

[8]     It is not clear whether Plaintiff also intended to allege that the Prosecutorial Defendants were engaged in a conspiracy to infringe upon Plaintiff's civil rights pursuant to 42 U.S.C. § 1985. Regardless, it is immaterial whether Plaintiff may have intended to assert a claim under section 1985 "because the relevant absolute immunity analysis is the same for § 1983 and § 1985 claims." Segers v. Williams, 12 F. Supp. 3d 734, 738 n.6 (E.D. Pa. 2014) (first citing Waits, 516 F.2d at 205, then citing Patterson v. City of Philadelphia, No. 08-2140, 2009 WL 1259968, at *9 (E.D. Pa. May 1, 2009)); see also Patterson, 2009 WL 12599681, at *9 ("The doctrine of absolute prosecutorial immunity precludes conspiracy-based claims as well.").

incompetent or those who knowingly violate the law." Bryan v. United States, 913 F.3d 356, 362 (3d Cir. 2019) (citing City & Cty. of San Francisco, Calif. v. Sheehan, 575 U.S. 600, 609 (2015)). "[A] prosecutor will be shielded from liability if his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Reitz v. Cty. of Bucks, 125 F.3d 139, 146-47 (3d Cir. 1997) (internal quotation marks and citations omitted).

Here, even when liberally construed, Plaintiff's allegations do not suggest that he suffered any clear constitutional violations at the hands of the Prosecutorial Defendants. Plaintiff's allegations amount to general misgivings regarding the proceedings before Judge Coll. Accordingly, even if absolute immunity did not apply to the Prosecutorial Defendants, qualified immunity would apply.[9]

---

[9]    Even if the Court were to find that absolute or qualified prosecutorial immunity does not apply, the case would otherwise be dismissed pursuant to Younger v. Harris, 401 U.S. 37 (1971), because the principles of federalism require the Court to abstain from enjoining pending state criminal proceedings. Younger provides that a Court should abstain from interfering with state judicial proceedings where "(1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims." Kendall v. Russell, 572 F.3d 126, 131 (3d Cir. 2009) (applying Younger).
    Here, the requirements for Younger abstention are clearly met. First, the criminal proceedings against Plaintiff are still ongoing in state court. Second, the state proceedings implicate the interests of enforcing the Commonwealth's criminal laws. See Scott v. Tonkin, No. 20-5412, 2020 WL 7240447, at *4 (E.D. Pa. Dec. 9, 2020) (Robreno, J.). Finally, Plaintiff will have an adequate opportunity to "to raise federal constitutional defenses to [his] prosecution" in state court. Jaffery v. Atlantic Cty. Prosecutor's Office, 695 F. App'x 38, 41 (3d Cir. 2017).

13

**B. The DHS Defendants**

The DHS Defendants, which include Defendants Pennsylvania Department of Human Services, Secretary Teresa D. Miller, Jessica Keith, and Patrick Marano, became involved in the underlying proceedings after Judge Coll ordered that Plaintiff be evaluated at the Norristown State Hospital ("NSH"). NSH is operated by DHS, which employs Teresa Miller as the Secretary of DHS, Jessica Keith as the Executive Director of NSH, and Patrick Marano as legal counsel for NSH and Defendant Keith. The DHS Defendants have not played a role in the prosecution of Plaintiff.

In light of the competency proceedings before Judge Coll, NSH produced a report on Plaintiff's condition. Plaintiff alleges that pursuant to section 1983, the actions of the DHS employees were unlawful because the report had been altered and the report contained an opinion that NSH could not assist Plaintiff (Counts VI, VII). Plaintiff also alleges that DHS violated Plaintiff's rights under section 1983 because it "has done nothing to ensure that procedures and practices have been implemented to insure [sic] that any criminal defendant identified as [i]ncompetent and incarcerated for transfer to a state hospital is immediately placed in line for transfer." Compl. ¶ 186.

The DHS Defendants argue that Plaintiff's claims should be dismissed because they are barred by Eleventh Amendment immunity. "[S]uits against unconsenting [s]tates" are barred by Eleventh Amendment sovereign immunity unless a state has waived its immunity. Sossamon v. Texas, 563 U.S. 277, 284 (2011) (quoting Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 54 (1996)). "Where a state agency or department is named as defendant, that too is considered a suit against a state which is barred by the [E]leventh [A]mendment." Geis v. Bd. of Educ. of Parsippany-Troy Hills, Morris Cty., 774 F.2d 575, 580 (3d Cir. 1985) (citing Fla. Dep't of Health & Rehabilitative Servs. v. Fla. Nursing Home Ass'n, 450 U.S. 147 (1981)). This also applies to suits against employees of the state or the state's agencies when the suit is brought against those employees in their official capacities. See Randolph v. Wetzel, 987 F. Supp. 2d 605, 613 (E.D. Pa. 2013) (Robreno, J.).

"[A] plaintiff other than the United States or a state may not sue a state in federal court without the latter state's consent unless Congress abrogates the state's Eleventh Amendment immunity pursuant to a constitutional provision granting Congress that power." Chittister v. Dep't of Comm. & Economic Dev., 226 F.3d 223, 226 (3d Cir. 2020). Pennsylvania and its agencies have withheld consent to lawsuits brought under section 1983. See, e.g., 42 Pa. Cons. Stat. § 8521(b) ("Nothing

contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States."); 1 Pa. Cons. Stat. § 2310 ("[T]he Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity.").

However, there are limited exceptions to a state's Eleventh Amendment immunity. Pursuant to Ex Parte Young, courts may "provide only prospective, equitable relief to enjoin state actors from ongoing violations of federal law." Oliver v. Servs. Emps. Int'l Union Local 668, 418 F. Supp. 3d 93, 99 (E.D. Pa. 2019); see also Quern v. Jordan, 440 U.S. 332, 337 (1979) ("[A] federal court, consistent with the Eleventh Amendment, may enjoin state officials to conform their future conduct to the requirements of federal law.") (emphasis added). "In determining whether the doctrine of Ex parte Young avoids an Eleventh Amendment bar to a suit, a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." Verizon Md., Inc. v. Pub. Serv. Comm'n, 535 U.S. 635, 645 (2002) (alteration in original) (citation and internal quotation marks omitted).

16

Here, Plaintiff seeks damages from the DHS Defendants for alleged past violations of constitutional rights but does not seek prospective relief. To the extent the complaint even alleges a violation of a federal right,[10] the complaint does not seek relief for an ongoing or future violation. Accordingly, Plaintiff's claims against DHS and the DHS Defendants in their official capacities will be dismissed.[11]

### C. The Judicial Defendants

Plaintiff appears to bring a claim for monetary relief pursuant to section 1983 against the Judicial Defendants, as well as a claim for injunctive relief against Defendant Judge Coll. These will be addressed in turn.

### 1. Section 1983

---

[10]    Plaintiff's complaint, even when liberally construed, fails to allege that the DHS Defendants violated Plaintiff's constitutional rights.

[11]    The DHS Defendants note that Defendant Miller has been named in her official capacity as the Secretary of DHS, but it is unclear whether Plaintiff intended to sue Defendants Keith and Marano in their official capacities. Regardless, even if Plaintiff sought to sue Defendants Keith and Marano in their individual capacities, Plaintiff's claims against these defendants would still fail.

    To bring a claim under section 1983 against individuals, the "plaintiff must demonstrate [th]e defendant's 'personal involvement in the alleged wrongs' . . . . by describing the defendant's participation in or actual knowledge of an acquiescence in the wrongful conduct." Chavarriaga v. N.J. Dep't of Corr., 806 F.3d 210, 222 (3d Cir. 2015) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)). Regardless of whether Plaintiff sufficiently alleges that Defendants Keith and Marano do not allege that Defendants Keith and Marano were personally involved with any of the alleged acts, i.e., in providing an unlawful report and evaluation of Plaintiff. Plaintiff merely alleges that Defendants Keith and Marano "have conspired to deny Plaintiff any possibility of a fair trial." Compl. ¶ 199. Accordingly, the complaint will be dismissed against Defendants Keith and Marano to the extent Plaintiff intended to sue them in their individual capacities.

Plaintiff brings claims against Judicial Defendants Judge Michael Coll (Counts I, VIII) and Judge James Bradley (Counts II, VIII) alleging that the Judicial Defendants violated his Fourteenth Amendment constitutional rights. Though Plaintiff's complaint is a bit difficult to decipher, Plaintiff appears to allege that the Judicial Defendants engaged in misconduct when presiding over aspects of the underlying criminal proceedings.

The public dockets reveal that the underlying criminal proceedings were transferred to Judge Coll so that Judge Coll could review Plaintiff's motions to be declared incompetent to stand trial. Plaintiff alleges that Judge Coll scheduled a sham competency hearing[12] and wrongfully denied Plaintiff's motion for recusal. Compl. ¶ 170. The public dockets reveal that after Judge Coll reviewed Plaintiff's motions, the cases were transferred to Judge Bradley. Plaintiff alleges that Judge Bradley later denied subsequent motions to be found incompetent and "decided to protect Norristown State at Plaintiff's expense." Compl. ¶¶ 112, 114. Though Plaintiff does not specify whether he intended to sue Judges Coll and Bradley in their judicial or individual capacities, because Plaintiff's allegations relate to actions taken by Judges Coll and Bradley that are in the scope of their judicial duties, the Court

---

[12]    The public dockets reveal that Judge Coll initially found Plaintiff incompetent to stand trial but that ruling was later reversed. Judge Bradley later denied subsequent motions to be found incompetent to stand trial.

construes Plaintiff's allegations as suing Judges Cole and
Bradley in their judicial capacities only.

The Judicial Defendants argue that judicial immunity bars
Plaintiff's claims. "The Supreme Court long has recognized that
judges are immune from suit under section 1983 for monetary
damages arising from their judicial acts." Gallas v. Supreme
Court of Pennsylvania, 211 F.3d 760, 768 (3d Cir. 2000). The
Third Circuit has provided that courts "must engage in a two-
part inquiry to determine whether judicial immunity is
applicable." Id. "First, a judge is not immune from liability
for nonjudicial actions, i.e., actions not taken in the judge's
judicial capacity." Id. (citing Mireles v. Waco, 502 U.S. 9, 11
(1991)). "Second, a judge is not immune for actions, though
judicial in nature, taken in the complete absence of all
jurisdiction." Id. (citing Mireles, 502 U.S. at 12).

With regard to the first factor, the court must
"[determine] whether an act by a judge is a 'judicial' one
relate to the nature of the act itself, i.e., whether it is a
function normally performed by a judge, and to the expectations
of the parties, i.e., whether they dealt with the judge in his
judicial capacity." Id. at 768-69 (citing Stump v. Sparkman, 435
U.S. 349, 362 (1978)). Here, Plaintiff's allegations involve
actions taken by Judges Coll and Bradley while they were
presiding over Plaintiff's underlying criminal proceedings.

19

The second factor requires the Court to distinguish between acts in the "clear absence of all jurisdiction, which do not enjoy the protection of absolute immunity, and acts that are merely in excess of jurisdiction, which do enjoy that protection." Id. at 769 (internal quotation marks omitted). Generally:

> A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdiction over the subject-matter. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. But where jurisdiction over the subject-matter is invested by law in the judge, or in the court which he holds, the manner and extent in which the jurisdiction shall be exercised are generally as much questions for his determination as any other questions involved in the case, although upon the correctness of his determination in these particulars the validity of his judgments may depend.

Id. (quoting Stump, 435 U.S. at 356 n.6).

Additionally, "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" Id. (citing Stump, 435 U.S. at 356-57). Judicial immunity applies even if a judge "has committed grave procedural errors," if a "judge has conducted a proceeding in an informal and ex parte manner," or if a "judge's action is unfair or controversial." Gallas v. Supreme Court of Pennsylvania, 211

F.3d 760, 769 (3d Cir. 2000) (internal citations and quotation marks omitted).

Here, even when liberally construed, Plaintiff's complaint does not include any allegations that Judges Coll and Bradley were acting without jurisdiction over Plaintiff's criminal proceedings. Accordingly, even though Plaintiff contends that Judges Coll and Bradley made improper rulings, judicial immunity applies and the claims against the Judicial Defendants will be dismissed.[13]

### 2. Injunctive Relief

Here, with respect to Judge Coll, Plaintiff requests that the Court "issue an injunction requiring, at a minimum, the assignment of an out of the county judge to further preside over Plaintiff's underlying criminal case and halting further proceedings until these dispositive matters can be properly adjudicated." Compl. ¶ 107. Regardless of whether the Court would have the power to grant this relief, judicial immunity applies to requests for injunctive relief. Pursuant to the Federal Courts Improvement Act of 1996 Pub. L. No. 104-317, 110 Stat. 3847 (1996) (codified as amended at 42 U.S.C. § 1983

---

[13]    It is not clear whether Plaintiff intended to allege that the Judicial Defendants were engaged in a conspiracy against Plaintiff under 42 U.S.C. § 1985. As previously noted, this is immaterial because immunity is treated the same with respect section 1983 and section 1985 claims. See supra note 6.
    Further, even if judicial immunity did not apply, the case would be barred by Younger. See supra note 7.

(2012)) ("FCIA"), "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable."

Because Plaintiff "has not alleged that a declaratory decree was violated or that declaratory relief is unavailable, and because the injunctive relief sought by [Plaintiff] does not address the actions of [the Judge] other than in his judicial capacity, his claim for injunctive relief is barred." Azubuko v. Royal, 443 F.3d 302, 304 (3d Cir. 2006).

**D. The County Defendants**

Plaintiff brings two Monell claims against the County of Delaware and its prison provider, The GEO Group, Inc. ("GEO"). Plaintiff also brings a Monell claim against the County of Delaware and the Delaware County Board of Judges. Because these claims are related, they will be addressed in turn below.

1. Monell Claims: The County of Delaware and GEO

Plaintiff brings two claims under section 1983 against GEO, which served a municipal function by operating the George W. Hill Correctional Facility where Plaintiff was incarcerated, and the County of Delaware (Counts III, IV).[14] Plaintiff makes vague

---

[14]     Plaintiff brings Count IV against John Does 1 through 5 as well. The following arguments apply equally to John Does 1 through 5.

claims that he was incarcerated illegally and was denied religious services, proper medical treatment, and access to the law library. Plaintiff also alleges that political motives incentivized Defendants GEO and the County of Delaware to wrongfully incarcerate individuals so that GEO could turn a profit.[15]

Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. The statute "is not itself a source of substantive rights, but [rather] a method for vindicating federal rights elsewhere conferred[.]" Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). The Supreme Court in Monell v. Dep't of Soc. Serv. of City of New York, 436 U.S. 658 (1978),

---

[15]    Defendants Geo and the County of Delaware have filed separate motions to dismiss, but because their arguments overlap, both motions will be addressed herein.

provided that municipalities may be subject to section 1983
claims in limited circumstances. Monell, 436 U.S. at 690.

"Under Monell, a municipality . . . is not responsible for
the random acts of its employees based on respondeat superior,
but a municipality may be liable when an official policy,
custom, or deliberate indifference to the rights of its
citizens, causes an injury to a plaintiff." Johnson v. City of
Phila., 397 F. Supp. 3d 692, 709 (E.D. Pa. 2019). To bring
a Monell claim, "a plaintiff must establish (1) that a
constitutionally-protected right has been violated, and (2) the
alleged violation resulted from municipal policy or custom, or
the deliberate indifference to the rights of citizens." Id.

Here, Defendant GEO was a private company performing a
municipal function by operating the correctional facility. See,
e.g., Eckstrom v. Cmty. Educ. Ctrs., Inc., No. 19-782, 2019 WL
3804146, at *5 (E.D Pa. Aug. 12, 2019) ("The theory of municipal
liability applies to 'private companies performing municipal
functions.'") (quoting Smith v. Cmty. Educ. Ctrs., Inc., No. 18-
5299, 2019 WL 2089997, at *2 (E.D. Pa. May 10, 2019)).
Defendants GEO and the County of Delaware contend that Plaintiff
has failed to state a claim under Monell.

First, Defendants GEO and the County of Delaware aver that
Plaintiff cannot meet the first requisite factor of a Monell
claim because Plaintiff has not alleged that they violated a

constitutionally-protected right. Here, the majority of
Plaintiff's allegations amount to no more than complaints about
the manner in which GEO operated the correctional facility. For
example, Plaintiff alleges that a "private corporation runs it
with a pure profit motive," that there is no library in the
facility even though GEO's "literature specifically references
the existence of such a library," that there is "no regular
access to any physical activity, to the gym or to recreational
activities," that "[t]here are no toe or fingernail clippers
made available except two or three community pairs," that "[i]n
April it was so cold that milk from breakfast remained drinkable
the next day," that "[e]ach day certain limited hours are set
for inmates to be allowed out of their cells into the general
block area," and that "[t]he prison does not even have basic
cable so virtually every day the antennae would go out on some
or all of the limited channels that were available thus denying
the inmates the very limited pleasure of watching a little
television," among other similar allegations. Compl. ¶¶ 120,
122, 124, 125, 132, 134. These allegations are merely general
complaints about the prison facility and, alone, are
insufficient to state a basis for a constitutional violation.

        Plaintiff, however, also seems to allege that he was denied
inadequate medical care by Defendant GEO. Plaintiff alleges that
Defendant GEO prohibited Plaintiff from seeing a pain management

doctor for his reflex sympathetic dystrophy and failed to
provide "Plaintiff a minimum quantity of Ibuprofen to maintain
his anti-inflammatory status." Id. ¶ 149. Plaintiff also alleges
that he developed an abscess in his tooth and requested to see a
doctor or dentist. Id. ¶ 151. Plaintiff alleges that he "was in
so much pain for the next few days" but "was given nothing for
the pain." Id. ¶ 151. Plaintiff was not permitted to see a
doctor until he refused to voluntarily re-enter his cell, but
"[P]laintiff was sent down to medical and never even saw a
doctor or dentist." Id. ¶ 152.

Plaintiff has the beginnings of a Monell claim for
inadequate medical care. However, to state a Monell claim for
inadequate medical care against a municipality or a corporation
acting under the color of state law, the plaintiff must still
establish that a policy or custom caused the plaintiff harm. See
Hasty v. Cty. of Montgomery, No. 12-4335, 2014 WL 830282, at *3
(E.D. Pa. March 4, 2014). Specifically, the plaintiff must
establish that "(1) the municipality had a policy or custom that
deprived the plaintiff of his constitutional rights; (2) the
municipality acted deliberately and was the moving force behind
the deprivation; and (3) the plaintiff's injuries were caused by
the identified policy or custom." Ekqunife v. City of Phila.,
245 F. Supp. 3d 660, 674 (E.D. Pa. 2017). Courts have emphasized
that, "to establish a municipal policy or custom, a plaintiff

26

must show that 'through its <u>deliberate</u> conduct, the municipality was the "moving force" behind the injury alleged.'" <u>Id.</u> (quoting <u>Bd. of Cty. Comm'rs of Bryan Cty. v. Brown</u>, 520 U.S. 397, 403, (1997)) (emphasis in original).

Here, even when construed liberally, Plaintiff's allegations do not suggest that Defendants GEO and/or the County of Delaware had a specific policy or custom that influenced the medical treatment Plaintiff received. Plaintiff merely alleges that because the Republican Party was, at the time of the relevant events, in power in Delaware County, the County had a policy of sending inmates, including Plaintiff, to prison, "in the name of keeping [GEO] happy." Compl. ¶¶ 145, 163. Plaintiff alleges that as a result, the County of Delaware and GEO illegally incarcerated Plaintiff and other inmates. <u>See</u> Compl. ¶ 161 ("It is believed that it became the established policy or practice of the County to first enter into the contract with [GEO.] And then to continue the relationship for the economic benefit of the local Republican party."). However, this does nothing to support a potential claim that Defendants GEO or the County of Delaware had a policy that caused Plaintiff to receive inadequate medical care. Accordingly, Plaintiff's claim cannot survive here. <u>See</u> <u>Kane v. Chester Cnty. Dep't of Children, Youth and Families</u>, 10 F. Supp. 3d 671, 688 (E.D. Pa. 2014) (dismissing a <u>Monell</u> where the complaint "offer[ed] only bald

assertions that such policy or custom existed without any facts

to support that what happened . . . .").[16]

The Court will dismiss Plaintiff's Monell claims (Counts

III, IV) against Defendants GEO and the County of Delaware.

Plaintiff will be granted leave to amend his Monell claim for

inadequate medical treatment.

2. Monell Claim: The County of Delaware and the Board
   of Judges

Plaintiff appears to bring a similar claim against the

County of Delaware and the Board of Judges[17] (Count V), alleging

---

[16]     Defendant notes that to the extent Plaintiff seeks to bring a claim for
supervisory liability, Plaintiff has failed to do so. The Court agrees. To
allege a Monell theory of supervisory liability, Plaintiff must:

> (1) identify the specific supervisory practice or procedure that
> the supervisor failed to employ, and show that (2) the existing
> custom and practice without the identified, absent custom or
> procedure created an unreasonable risk of the ultimate injury, (3)
> the supervisor was aware that this unreasonable risk existed, (4)
> the supervisor was indifferent to the risk; and (5) the underling's
> violation resulted from the supervisor's failure to employ that
> supervisory practice or procedure.

Min v. Morris, 737 F. Supp. 2d 332, 339 (E.D. Pa. 2010) (quoting Brown v.
Muhlenberg Twp., 269 F.3d 205, 216 (3d Cir. 2001)). Here, Plaintiff has not
identified any specific supervisors or practices that the unidentified
supervisors failed to employ.
         Further, to the extent Plaintiff seeks to allege that Defendants Geo
and the County of Delaware engaged in a conspiracy to deprive Plaintiff of
his rights, that claim fails as well. To state a claim of conspiracy under
section 1983, "a plaintiff must establish (1)
the existence of a conspiracy involving state action; and (2) a deprivation
of civil rights in furtherance of the conspiracy by a party to the
conspiracy." Frompovicz v. Hissner, 434 F. Supp. 3d 269, 283 (E.D. Pa. 2020)
(quoting Rosembert v. Borough of E. Lansdowne, 14 F. Supp. 3d 631, 647 (E.D.
Pa. 2014)). Even when liberally construing Plaintiff's complaint, the Court
finds that Plaintiff has not made allegations to support either requirement.

[17]     Defendants the County of Delaware and the Delaware County Board of
Judges have filed separate motions to dismiss, but because their arguments
overlap, their motions will be addressed herein.

that it "was an established policy and practice of the County and the Board of Judges of the County" to deprive Plaintiff of a fair trial with a fair judge. Compl. ¶ 171.

Plaintiff's Monell claim fails here as well. Even when construed liberally, Plaintiff's allegations do not suggest that the County of Delaware or the Board of Judges violated a specific constitutionally-protected right, or that a specific policy caused the constitutional violation. See Johnson v. City of Phila., 397 F. Supp. 3d at 709. Accordingly, the claim against the County of Delaware and the Board of Judges will be dismissed.

Plaintiff will be granted leave to amend this claim against the County of Delaware. Plaintiff will not be granted leave to amend the complaint against the Board of Judges. Because the Board of Judges is part of the Delaware County Court of Common Pleas, which is part of the Unified Judicial System of Pennsylvania pursuant to 42 Pa. Cons. Stat. § 301(4), Eleventh Amendment immunity applies and the case against the Board of Judges will be dismissed with prejudice.[18] See supra section IV.B.

---

[18]    The Board of Judges appears to argue that they are entitled to judicial immunity. However, the only allegation with respect to the Board of Judges is that the "the agents and representatives of the county conspired to deprive Plaintiff of a fair trial with a fair judge and it is believed that this was an established policy and practice of the County and the Board of Judges of the County." Compl. ¶ 171. Because it is not clear whether the Board of Judges was acting in a judicial or in an administrative capacity from

**V.    CONCLUSION**

For the foregoing reasons, Defendants' motions will be granted. Defendants Mary Mann, Michelle Deery, Katayoun Copeland, William Judge, Judge Whelan, the Pennsylvania Department of Human Services, Secretary Teresa D. Miller, Jessica Keith, Patrick Marano, Judge Michael Coll, Judge James Bradley, and the Delaware County Board of Judges will be dismissed from this action with prejudice. Defendant will be granted leave to amend his Monell claims against the County of Delaware and The GEO Group, Inc.

---

Plaintiff's allegations, the Court will decline to find that judicial immunity applies to the Board of Judges at this time.